The next case on the calendar is Go v. Perfect Team. Go v. Perfect Team Good morning, Your Honors. My name is Samuel Chuang, and I represent the Appellant Defendants, Perfect Team Corporation, Mr. Chong Kit Chang, and Ms. Jolly Wong. I think I reserved two minutes for rebuttal, but in light of time, and since there are six arguments that were raised in a brief, I'd like to make one overall argument that touches on all of them, and that is how the Court overreacted to all of the issues that were raised by the Perfect Team defendants in this action. So I'd like to start with the tax question, the question that was raised at deposition. During deposition, Ms. Gao testified that she earned approximately $3,000 a month in wages and tips. However, on her unemployment application forms, she entered that she earned $3,800 per month, and she adhered to her story. And in order to test her credibility, which is going to be vital in this case, because the only written documents in this case are the record of the tips and a log of the net pay she received each pay period, there were no time records, and so her testimony regarding her time work would be important. Excuse me, this is Judge Winter in New Haven. Did you not concede the number of hours she worked and the wages she was paid in the papers relating to the summary judgment? No, we didn't. The Perfect Team defendants submitted, I think, 10 affidavits from the other coworkers. I'm talking about the motion for summary judgment, which is required by rule or local rule to list the material facts that are not in dispute, and you did not respond as you had to do that the hours worked and pay received were not disputed. I believe that we did dispute the hours that she worked. We didn't. Well, you disputed whether it was 60 or 61, but taking it even at the lesser hour, which you did not dispute, there was no traversion of what she earned during those times, and since you're raising the question of whether you should get her taxed things, to prove that, the question of what you traversed directly is exactly in point. Worse, you are now arguing before us, which you do not argue in your brief, that somehow we should reverse the summary judgment as to hours worked and pay received. I am arguing that the hours worked is incorrect. The pay she received, the 400 wages and net wages, is correct. Incorrect for reasons other than the difference between 60 and 61? Yes. It's very different. The affidavits that were submitted show that she worked only about 40 something hours a week, not 55 hours a week. The reason why these affidavits were submitted is because the individual defendants, Mr. Chang and Ms. Wong, didn't supervise Ms. Gao. She was supervising . . . Now you're raising something else about affidavits which were submitted, some of which were not accepted because of how they were presented. That's a different issue now from the tax . . . Yes. Yes. All I was trying to start off regarding that was that I wanted to ask Ms. Gao a simple question, which was if you overreported on the unemployment, did you underreport on your taxes? Because if she consistently overreported, that's one thing. There's nothing to say about that. But if she overreported when it's beneficial to her, but underreported when it's beneficial to her, that would be relevant to her credibility. And during the arguments, during the objections that were filed with that, I kept pointing out that I believe that she's going to underreport, and she's not denied it. The decision to bar the questioning was because there was analysis done by tax returns. I wasn't asking for a tax return. I just wanted to know how much she reported. Did she report $3,000 a month? Did she report $2,000 a month? Or did she report $3,800? I'm making sure I understand your argument. Your argument is that the affidavits that were stricken would have created a material issue of fact on this point? On the hours that she worked, yes. And I'm going to get to that immediately now. So how was there an abuse of discretion in the district court's decision that you shouldn't be permitted to submit those affidavits at the time you did? Yes. I think to start that answer, I need to take one step back to provide background, which is that there was a sanctions motion. And leaving aside the grounds for assuming that for argument that it's all correct, that the documents were laid or that the defendants didn't have certain information, the proper remedy for that shouldn't be to prevent the defendants from taking the depositions of these other plaintiffs. There's no connection between them. That doesn't make any sense. Well, if one of the things you did was to delay depositions, discovery, and everything else, and if you did that badly enough so that it was plausible to ask for a default judgment, why isn't it within the discretion of a district court to give a much lesser sanction and say, you can't keep doing this with respect to depositions, and we will create an adverse inference as to something else? That seems to me . . . no, there was plenty there so that far more severe sanctions have been granted in many cases. I would agree. But what I'm trying to say is that the foundation that you said there was a delay, that there was dilatory tactics, is completely untrue. I'd like to explain that very briefly if I can. Are you asking us to say that the district court erred on a factual finding about delay, the magistrate judge and the district court erred on a factual finding as to whether there was delay? How are we possibly to do anything of that sort when they were the judges there who were running their agenda and asking what was to be done on time? I mean, that's a remarkable thing to be asking a court of appeals to do. What I'm saying is that even if . . . I do deny that there's a delay, but I'll accept that for purposes of our discussion now. Even if there's a delay, how long was this delay? It couldn't . . . there was a bankruptcy stay in the middle of this discovery. The defendants never missed a deposition. All the documents that we have, we turned over within the first few months. It wasn't that there was later on, there was more documents forthcoming. The document discovery in this case ended in like maybe May of 2011. I appeared in this case in January of 2011. So in three months, we gave them the only documents that are presented in this case. All the documents in this case came in the first three months, the tip notebook, her income record, and that's it. Everything else that they're trying to claim, they're saying we're delaying, it doesn't exist. My client started . . . they stopped their business in 2009. This action started in 2010. They left, stupidly, all of their records behind. They don't have the names of the Latino workers. They don't have the addresses of anybody. So they're not able to produce it. They never wrote down or remembered the English names of these individuals. We're looking at one extended deadline for responses to interrogatories, document requests, and requests to admit. Help me if I'm misunderstanding the record here, but having looked at it, it looks like your client's provided no responses after an extended deadline to the request to admit, answered fewer than half of 20 interrogatories, and claimed that 30 categories of documents were not available. And so it's hard to believe that the district court clearly erred in finding that there was a record of not complying with discovery in this matter. On December 30th, I believe, in 2010, and in May 21st of 2011, and I just want to go with the order that you mentioned, you were saying that half the interrogatory questions weren't answered. They were all answered. I can look for it in the record to provide the interrogatory responses. Regarding the request to admit, the plaintiff didn't say, I want to see the request to admit. They're saying, since you didn't respond, we're going to treat that as admitted. So fine, I've said, if you want me to submit it now, and the response to me by plaintiff's attorneys is that, no, it's too late. And so that's the next thing. The third one was they're saying there's 30 categories of documents. What are these 30 categories of documents that we say we don't have? They don't have, they never kept time records, so they're asking for time records. It's a single shareholder entity. They never kept records of these kinds. They wanted bank records. They didn't have bank records, but they disappeared in the bank. The banks produced the bank records. So everything that they're trying to say that they don't have, most of it just doesn't exist because these aren't sophisticated businessmen. They started a restaurant. Their skill is not in maintaining records. And so the point that I'm trying to get to about these records and these issues is not that there was more forthcoming, but even the records that they're trying to say that they wanted, the records from the alleged transfer from Perfect Team to Jishang, even if there were such records, the argument they're trying to make is that there's successor liability from Perfect Team to Jishang, the corporation that took over the restaurant. If they want to allege that, that's fine, but the adverse inference wasn't saying, well, there's now a successor corporation. It now goes to joint employment. None of the records would show whether or not Mr. Chang or Ms. Wong exercised functional control, exercised operational control over Ms. Gao, the plaintiff. One has nothing at all to do with the other. And so that's why it's a complete overreaction. So the court shouldn't have granted precluding us from taking discovery. And the reason why that leads to summary judgment is because the objections to the report and recommendation were submitted on, I think, like April 2013. On December 31, 2013, Judge Vitaleano adopted the report and recommendation. And within a month, the motion for summary judgment was put on the table. There's no time for me to go and search for all these other people. I'm stunned that we're not able to take the deposition of parties in this case, especially of Xia Hongzhen, who is still in the case. And from there, I had to go and ask and look down the list in the interrogatory response with all these waiters to see who was available, who could I find to get affidavits for. If I could get 30, I'd get all 30. But we were only able to find eight within the four months that I had to submit my opposition to the motion for summary judgment. So we did all that we could, but I'd get more if I could. It's not right that each of these decisions that prejudice the defendants from putting on defense keeps rolling on to knock out each next stage of the litigation. And I see my time is up. Thank you. You state in your brief that your motion for summary judgment listed undisputed facts, and the defendants responded they were not disputing your statements as to hours worked and money received. Could you tell me where in the appendix that is? Yes, Your Honor. May it please the Court, I'm Michael Gottesman of WilmerHale for Plaintiff Appellee Lerong Gao. Your Honor, the statements about Ms. Gao's hours worked and the wages that she earned were undisputed. And in the record, you can find the defendant's 56.1 statement on those issues at A1177 and A1178. In the special appendix, the district court addressed these issues at special appendix pages 87 and 89 to 92, especially on page 91. The core point here is that Ms. Gao's claims are simple. Her claims are that the defendants failed to pay her what they owed her under federal and New York labor law. The summary judgment was, the district court awarded her summary judgment based on a handful, on a small handful of undisputed facts about her hours and her wages. Those wages amounted to less than $2 per hour. Now, on appeal, the district, sorry, on appeal, the defendants argued that the district court overlooked pieces of evidence that would have created disputes of fact. The trouble is that most of the facts that the district court relied on are ones that the defendants flat out conceded, as Your Honors have acknowledged. The only evidence that defendants claimed the district court overlooked was either the evidence that was properly struck from the record, or evidence that the district court carefully considered and properly concluded did not create disputes of fact. Now, defendants' reliance in their reply brief and today on the stricken affidavits should be disregarded because those affidavits were properly stricken, as I'll address. And turning to the defendants' overall theory here, that the district court overreacted. The district court did no such thing. The district court handled this case carefully. It examined the record, and its discovery decisions were well-founded and certainly not an abuse of discretion. Turning to those discovery decisions that the defendants have raised, they first argued that they should have been allowed to ask Ms. Gow about her tax returns. As the court has recognized, the district court properly determined that the defendants should not be able to ask Ms. Gow about those records because they were entirely irrelevant to this case. Defendant's suggestion that her credibility was at issue is at odds with the fact that defendants conceded the hours that she worked and the wages that she was paid. And their allegation that there was a dis- If anything depended on her credibility, then that would be an issue of fact in any event without the additional fact of the tax things. That is, if her credibility was an issue as to establishing some facts which were relevant, that would be enough to say that a summary judgment shouldn't have been granted. Isn't that right? I mean, if there is an issue of credibility and that some facts depend, then that's a fact question. But in a way, the moment we say there are no, you say there are no disputed facts that matter, then her credibility can't be an issue so that the tax things wipes out on its own. That's correct, Your Honor. As for defendant's complaints about the sanctions that were imposed, those sanctions were well deserved. There was a list, a long string of violations here that imposed delay and cost on Ms. Gow. We summarized some of those on page eight of our brief. The district court was well within its discretion to impose those sanctions. As for the defendant's theme that they were prevented from developing their case, the discovery here lasted for two years. Defendants had every opportunity to develop their case. They took written discovery. They deposed Ms. Gow twice. Even after the close of discovery, they indicated to the lower court that they may wish to seek additional discovery. The lower court outlined a process for them to do that if they wished, and they never did that. None of the district court's discovery decisions was an abuse of discretion. The last issue that they phrased on appeal is the attorney's fees issue. Before you get to the attorney's fees, could you just marshal the argument as to the decision not to consider the affidavits? I'd be happy to. Why that was within the scope of the district court's discretion? Sure. Those . . . and let me try to provide some context here. After two years of discovery, the plaintiffs moved for summary judgment. In response, in opposition to summary judgment, defendants submitted ten affidavits in an attempt to create a dispute of material fact. Those affidavits were from affiants who had not been properly disclosed during discovery. Two of those affiants had not been disclosed at all. Defendant's argument with respect to the remaining eight affiants is that they were disclosed in a list of 35 employees or former employees of the restaurant. In response to an interrogatory, defendants do not mention the fact that in their Rule 26 disclosure, they stated that they did not plan to rely on any witnesses. When it came time for summary judgment, they submitted these affidavits from never-before-disclosed affiants, and the district court properly ruled that evidence that had been withheld during this long period of discovery should not be considered on summary judgment. That was not a matter of sanctions. That was a matter of standard court decision as to what can come in when no notice was given earlier than it would be. Is that correct? That's correct, Your Honor. When the defendants submitted the affidavits, the plaintiff's counsel, Ms. Gow's counsel, moved to strike them. It was the district court granted that motion to strike. That was not an abuse of discretion. Turning to the last issue, attorney's fees, the defendant's complaints that the attorney's fees here are too high fail for two principal reasons. First, it was the defendant's conduct that drove much of the cost of this litigation. As the lower court acknowledged, the defendants were solely responsible for much of the time that plaintiff's counsel had to spend on this matter. That's a quote from Special Appendix, page 165. Second, the award was the result of careful analysis by the district court, and incorporated several substantial reductions that both Ms. Gow's counsel had proposed, and in response to some proposed reductions from defendants. Let me see if I understand your argument. Your argument is that it wasn't that the plaintiff was getting counsel fees which were way out of proportion to what was involved in the case, as in Arbor Hill, but that here a certain amount was being sought, and presumably counsel fees consistent with that would have been charged, but then the defendant added on expenses in order to fight that. If counsel fees are not granted in these situations, then a defendant can almost always destroy a small claim by making other claims that would, in discovery, making other things which would cause it to be much too expensive to be worthwhile being paid for. Is that your argument? That is. That's absolutely correct, Your Honor. This award of attorneys' fees is also reviewed for abuse of discretion. The district court did not abuse its discretion. In conclusion, I'd like to come back to the fact that Ms. Gow is a restaurant worker who's now in her eighth year of trying to recover the pay that defendants owe her. And we ask this court to affirm the lower court's judgment for her and allow her to recover fair pay for her labor, and none of the arguments defendants raise on appeal present any hurdle to doing that. Thank you. So I'd like to start quickly with the documents I was looking for when I sat down. So I wanted to go first to the interrogatories. So the interrogatory responses are on pages A78 through A97. And in those interrogatory responses that were sent on May 27, 2011, every interrogatory is responded to. And so I don't know how the court below is saying that half the questions weren't responded to and these delays. The next thing I wanted to get to was the Rule 56 statement that Judge Winters was saying, In paragraph 53, all it says is that Plaintiff Gow regularly worked more than 40 hours per week throughout the time she worked at Perfect Team. And that's correct. She worked more than 40 hours a week. It doesn't say she worked 60 hours a week, 61 hours a week, or 55 hours per week. Next paragraph is that from April 21, 2008, to June 1, 2009, Plaintiff Gow regularly worked six days per week at the restaurant. She did regularly work six days per week at the restaurant. The issue that we have is she's saying from the minute I walk in to the minute I walk out, I'm always at work. Whereas every waiter said we have a downtime in the middle of the day. We have two meal breaks depending on the shift. You might have two, you might have one. Depending on when you work, you also have a meal break. So she doesn't, although her shift from beginning to end is ten hours, she didn't work ten hours a day. She worked eight hours a day, seven and a half hours a day. So when you add that up, it's not 55, it's now 40 something. And that's the dispute that we have in these hours. So we didn't admit the times. And regarding, there was a statement before about having, may I? Let me make this final point, yes. Well, I want to get to the attorney's fees because I think. All right, make that final point. Okay. Regarding the attorney's fees, as I've explained in my brief already, so I'm going to move beyond that. I understand Judge Calabrese's point about if we entered into tactics that imposed costs on them, we should pay for it. And that's not the point. That's absolutely true, but that's not what we're pointing out. Over here, the plaintiffs engaged themselves in so much overreaching, so many motions, that it was unnecessary. We've told them we don't have these documents. I take it you're not arguing that attorney's fees might be justified if you behaved in the way the court found that you did, but you deny throughout your whole argument that you did. And if it wasn't so, then, of course, the attorney's fees would follow the same way. Yes, but that's true, but that's responding to what you were saying. But what I'm trying to say is that these plaintiffs, for example, spent a quarter of their time, $50,000, pursuing a strategy of getting prejudgment attachment that has, to my research, never been successful. Under Barfield or Arbor Hill, so we talked about Arbor Hill. There's no paying client that would spend $50,000 to pursue this kind of a case. I'm sorry, to pursue that kind of an action. The restaurant's there. Everything's running. Why would you go and take these kinds of steps? You have no evidence. You just have a suspicion, and that's not enough. But once you get to Barfield, as I was trying to say in the quality and quantity of the relief, the district court is going by counting claims. Oh, well, I prevailed in full on three claims, and I prevailed in part on two claims. It's not claim by claim analysis. It's about how much money they received. She was seeking $179,000 for one year of work, and she recovered only 46. I'm sorry. But she recovered 25% of what she was chasing after. And I've broken it down in my reply, how overreaching they were. They're trying to get collective action. Not only did nobody else join, but even the people that joined left without a fairness determination, without anything. They just up and left and refused to be deposed. So for her to get nearly all of her recovery, because I think the judge, well, the magistrate and the judge will only give a 10% and 15% discount for their lack of success in people withdrawing. That's wholly insufficient for only this recovery. Because it's not like she had alternative claims, seven alternative claims, and she prevailed on one, and that was enough. We have your briefing on this. If there are no other questions from my colleagues, we've been very generous with the time. So I thank you for your argument. Thank you both. And we'll take the matter under advisement. Thank you.